1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teimuraz Tsirekidze, On Behalf of Himself and All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>Syntax–Brillian Corp., Vincent F. Sollitto, Jr., and Wayne Pratt,<br><br>  Defendants. | No. CV-07-2204-PHX-FJM<br><br>**ORDER**<br><br><br><br><br><br><br><br>**CONSOLIDATING** |
| The Nagel Family Trust, On Behalf of Itself and All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>Syntax–Brillian Corp. A.K.A. Olevia International Group, Inc., Vincent F. Sollitto, Jr., James Ching Hua Li, Man Kit (Thomas) Chow, and Wayne Pratt,<br><br>  Defendants. | No. CV-07-2454-PHX-ROS<br><br><br><br><br><br><br><br><br><br><br><br>[caption continued on following page] |

| | |
|---|---|
| Angelko Bogdanov, On Behalf of Himself ) and All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Syntax–Brillian Corp., Vincent F. Sollitto, ) Jr., James Li, and Wayne Pratt, ) <br> ) <br> Defendants. ) <br> ) | No. CV-07-2524-PHX-ROS |
| Paula Langley, Individually and On Behalf ) of All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Syntax–Brillian Corp., Vincent F. Sollitto, ) Jr., and Wayne Pratt, ) <br> ) <br> Defendants. ) <br> ) | No. CV-07-2525-PHX-SRB |

Four securities class actions have been filed in this district against defendant Syntax–Brillian Corp. and several of its officers. Five members of the proposed class now move for consolidation of the actions, for appointment as lead plaintiff, and for approval of lead counsel. The court has before it the following documents: Syntax Investor Group's motion, (doc. 6), supporting memorandum (doc. 7), memorandum in response to competing motions (doc. 27), and reply in further support of its own (doc. 36); the McCullough Family's motion (doc. 23), supporting memorandum (doc. 8), supporting declaration of Gustavo Bruckner (doc. 9), response to competing motions (doc. 28), and reply in further support of its own (doc. 37); Angelko Bogdanov, John Gardini, and Bloomfield, Inc.'s motion (doc. 11), supporting memorandum (doc. 12), and supporting declaration of Frank

Verdame (doc. 14);[1] the Farrukh Group's motion and supporting memorandum (doc. 15), response to competing motions (doc. 30), and reply in support of its own (doc. 38); and the City of St. Clair Shores Police and Fire Retirement System's motion (doc. 17), supporting memorandum (doc. 18), supporting declaration of Michael Salcido (doc. 19), response to competing motions (doc. 32), and reply in further support of its own (doc. 40).

**I**

All four complaints name as defendants Syntax–Brillian Corp. ("Syntax"), a manufacturer and distributor of high definition televisions based in Tempe, Arizona; Vincent Sollitto, Jr., who is chairman of the company's board of directors and served as chief executive officer until September 30, 2007; and Wayne Pratt, who was the company's chief financial officer and vice president until September 30, 2007. Two of the complaints name additional defendants. One adds James Ching Hua Li, a company director who became chief executive officer in October 2007;[2] the other adds James Ching Hua Li as well as Man Kit Chow, the company's executive vice president and chief procurement officer.[3]

All four complaints seek recovery under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t (2006). Plaintiffs allege that defendants overstated profits and projections, concealed shortfalls, and otherwise misled investors, which caused an artificial inflation of Syntax stock price. The complaints propose a class of investors who suffered losses when the stock dropped precipitously on September 13, 2007, following a company announcement that Syntax revenues were much lower than anticipated. Three complaints propose essentially the same "class period"—that the class be open to those

---

[1] The court also has before it the Bogdanov Group's supporting memorandum that appears only on the docket of No. CV-07-2524-PHX-ROS (doc. 41).

[2] No. CV-07-2524-PHX-ROS

[3] No. CV-07-2454-PHX-ROS

who acquired Syntax stock roughly between May 1, 2007, and September 13, 2007. One complaint proposes a longer class period, February 9, 2007, to November 14, 2007.[4]

**II**

Under Rule 42, Fed. R. Civ. P., we may consolidate "actions involving a common question of law or fact." The complaints in these four actions are nearly identical, and the minor differences in proposed class periods and named individual defendants are not obstacles to consolidation. Olsen v. N.Y. Comm. Bancorp, Inc., 233 F.R.D. 101, 104–105 (E.D.N.Y. 2005). Therefore, the motions to consolidate are granted.

The method for appointing a lead plaintiff in a securities class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 (2006). The party who files the action must publicize its pendency, the proposed class period, and the nature of the claims. § 78u-4(a)(3)(A)(i). The publication must also inform potential class members that they have 60 days to come forward and move to be appointed lead plaintiff. § 78u-4(a)(3)(A)(ii). If, as here, multiple class actions are brought asserting substantially the same claims, publication is required only of the first to file, in this case Syntax Investor Group. § 78u-4(a)(3)(A)(ii). Once the 60-day window closes, the court determines the lead plaintiff ("most adequate plaintiff").

Under the PSLRA, the court "shall adopt a presumption that the most adequate plaintiff is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u-4(a)(3)(B)(iii)(I). Only two requirements of Rule 23, commonly referred to as "typicality" and "adequacy," are relevant to the selection of lead plaintiff. In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). First, the claims or defenses of the lead plaintiff must be "typical of the claims or defenses of the class." Second, the lead plaintiff must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4). Once the presumption is established, other potential lead

---

[4] No. CV-07-2524-PHX-ROS

- 4 -

plaintiffs may rebut it with proof that the "presumptively most adequate plaintiff" *does not* satisfy the two requirements of Rule 23. § 78u-4(a)(3)(B)(iii)(II). This perplexing statutory scheme suggests that the initial determination on typicality and adequacy "should be a product of the court's independent judgment, and that arguments by members of the purported plaintiff class . . . should be considered *only* in the context of assessing whether the presumption has been rebutted." In re Cendant Corp. Litig., 264 F.3d 201, 263–64 (3d. Cir. 2001).

Therefore, we must first rank potential lead plaintiffs in order of financial interest. Beginning with the potential lead plaintiff who has the greatest financial interest, we make a determination on typicality and adequacy, relying only on that party's "complaint and sworn certification." In re Cavanaugh, 306 F.3d at 730. If the party has made a prima facie showing of typicality and adequacy, that party becomes the presumptive lead plaintiff, and we then consider rebuttal evidence from competing movants for lead plaintiff. If the presumption is not rebutted, lead plaintiff is determined. If, however, the presumption is either not established or is successfully rebutted, we go back and consider the typicality and adequacy of the potential lead plaintiff who has the *next greatest* financial interest, proceeding so on until a lead plaintiff is found. Id. at 731.

Before applying the PSLRA approach, we note that its enactment was an effort by Congress to counteract the tendency of securities class actions to be "lawyer driven." Before PSLRA, lead plaintiff status generally went to the first to file. This resulted in a "race to the courthouse," and eager counsel rounded up "lead" plaintiffs who effectively exercised no control over the litigation. PSLRA's notice requirement slows the race and gives seriously interested class members an opportunity to step forward. The presumption in favor of the movant with the greatest financial interest (who satisfies Rule 23) assumes that a class member with much at stake, often a large institutional investor, will have the most incentive, and be in the best position, to actually exert influence over lead counsel. See id. at 729.

Though Congress has attempted to shift the balance with PSLRA, a review of the documents filed so far in this action makes clear that counsel have nonetheless succeeded in keeping themselves at the forefront of securities class actions. We have before us six inches of briefing that has precious little to do with the merits of the claim and less to do with the fitness of any class member to steer this litigation. What we have in abundance is unwelcome sniping among counsel.

### III

The potential lead plaintiffs must be ranked in terms of their "financial interest" in the litigation.[5] Courts have proposed several metrics by which to measure financial interest. Fortunately, there is little dispute among the parties on this point. The parties essentially agree to a ranking in terms of estimated financial loss as follows:  1) the Farrukh Group (about $ 300,000), 2) the McCullough Family (about $ 165,000), 3) the Syntax Investor's Group (about $155,000), 4)  St. Clair Shores Police and Fire Retirement System ($28,800), and 5) the Bogdanov Group ($17,590).

To begin, we decide whether the Farrukh Group, the proposed lead plaintiff with the largest financial interest, satisfies the requirements of Rule 23 based on its motions and declarations. We note that a "district court has latitude as to what information it will consider in determining typicality and adequacy." In re Cavanaugh, 306 F.3d at 732. On the question of adequacy, we focus on the Farrukh Group's status as a "group." Although the PSLRA allows groups to serve as lead plaintiffs, "courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." In re Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 451 (C.D. Cal. 2002). For the most part, to "allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing

---

[5] Two of the parties who filed complaints, Paula Langley (CV-07-2525-PHX-SRB) and the Nagel Family Trust (CV-07-2454-PHX-ROS), have not moved to be appointed lead plaintiff, so we have no way to determine their financial interest.

- 6 -

a lead plaintiff." In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997). Such a group is unlikely to "fairly and adequately represent the class" because it is unlikely to engage in the litigation in a meaningful way at all. Fed. R. Civ. P. 23(a)(4). What is more, when unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation. See In re Donnkenny Inc. Sec. Litig., 171 F.R.D. at 158 ("[With the PSLRA,] Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

From their papers, it appears that the Farrukh "Group" consists of three completely unrelated individuals from different parts of the country. There is no suggestion how they plan to work together as a cohesive unit. As far as we can tell, each individual has so far participated only to the extent of signing his name onto a boilerplate "certification in support of application of lead plaintiff." See Motion of the Farrukh Group (doc. 15), Ex. A. At one point, the group suggests that we pluck one of its top-two constituents to serve as lead plaintiff "if this Court does not appoint a group as the lead plaintiff." Reply of the Farrukh Group (doc. 38) at 6. We decline to do so. The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together.

Given no evidence of cohesiveness, we are not convinced that the Farrukh Group will adequately represent this class. Cf. In re Northwestern Corp. Sec. Litig., 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (approved group had established a plan for conducting litigation, including mechanisms to call meetings and resolve disagreements). Even if the Farrukh Group had established itself as presumptive lead plaintiff, there is rebuttal evidence. Competing movant Syntax Investor Group has brought to our attention a "press release" issued by the Farrukh Group's counsel the day before the lead-plaintiff window closed, which "urges" Syntax investors to sign up with the firm. Sytnax Investor Group's Reply at 8–9. All members of the Farrukh Group signed certifications in support of lead plaintiff status the next day, January 15, 2008, the day lead plaintiff motions were due.

The Farrukh Group does not contest that their participation was a product of counsel's "press release." They even suggest that their signing certifications on the same day (the day motions were due) is evidence of the group's cohesiveness. Farrukh Group's Response (doc. 30) at 9. We are not persuaded. Without determining the ethical implications of counsel's patent effort to solicit clients, we conclude that the Farrukh Group's formation runs directly contrary to the goals of the PSLRA—to reduce lawyer-driven litigation. The Farrukh Group will not be appointed lead plaintiff.

Next, we turn to the McCullough Family group, which has the second greatest financial interest. Oddly, the group's principal member, Robert McCullough, Jr., was initially named as a member of a competing proposed lead plaintiff, the Syntax Investor Group. Syntax Investor Group's Motion (doc. 6), Ex. B. In his sworn declaration, McCullough states that he sent his lead-plaintiff certification to the wrong firm "in error." Memorandum of the McCullough Family (doc. 28), Ex. A. Such a blatant gaffe does not bode well for the adequacy of his group to lead this litigation.

The McCullough Family also has difficulty under the typicality prong of Rule 23. Typicality is not satisfied when a proposed lead plaintiff is subject to a unique defense, which could become the focus of the litigation. Zenith Labs., Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d. Cir. 1976). A review of Robert McCullough, Jr.'s trading history reveals that he was unusually active, making as many as 80 separate transactions of Syntax-Brillian stock in a single day. Declaration of Gustavo Bruckner (doc. 9), Ex. 3. Such a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself. See In re Safeguard Scientifics, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (noting that day traders often focus on technical price movements rather than price). While a day trader is not ipso facto disqualified from the lead plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class.

1  Next in terms of financial interest is the Syntax Investor Group. This group fails the adequacy prong of Rule 23 for much the same reason as the Farrukh Group. There is simply no evidence that this "group" has a meaningful connection. The group's lack of cohesion is clearly evidenced by the fact, mentioned above, that its initial motion included Robert McCullough, Jr. as a member, even though he had retained separate counsel and was soon filing competing motions of his own.

We next turn to the City of St. Clair Shores Police and Fire Retirement System ("St. Clair"). This is the first group that satisfies both prongs of Rule 23. The opposing movants make no argument against St. Clair other than pointing out its relatively low financial stake in the litigation. But we have thoroughly applied the In re Cavanaugh test, and St. Clair is the first to meet its standards. We are especially encouraged that the client is a public retirement fund and thus more likely to control counsel. We have reviewed St. Clair's proposal of Coughlin Stoia Geller Rudman & Robbins, LLP, as its proposed lead counsel, and Buckley King as its proposed liaison counsel. We conclude that these firms are more than capable of conducting this litigation in the best interests of the class.

Finally, the Bogdanov Group will not be appointed lead plaintiff because the group has less of a financial interest than St. Clair. The Bogdanov Group's contention that one of its constituents is uniquely capable of bringing certain claims is without merit.

**IV**

Accordingly, **IT IS HEREBY ORDERED** that St. Clair's motion for consolidation, appointment as lead plaintiff, and approval of counsel (doc. 17) is granted in full. **IT IS FURTHER ORDERED** that all other motions (docs. 6, 11, 15 & 23) are **GRANTED** insofar as they move for consolidation, but are otherwise **DENIED**.

DATED this 4th day of April, 2008.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 9 -